UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELITE INTERNATIONAL ENTERPRISE,
INC.,

       Plaintiff,

v.

PATTON WALLCOVERINGS, INC., and
NORWALL GROUP, INC.,

       Defendants,

                                      /

Case No. 12-14620

Honorable Nancy G. Edmunds

**OPINION AND ORDER ON RECALCULATION OF DAMAGES**

Plaintiff Elite International Enterprise, Inc., ("Elite" or "Plaintiff") obtained a grant of summary judgment as to liability against Defendant Patton Wallcoverings, Inc. ("Patton" or "Defendant"). The case went to a bench trial on damages where the Court awarded Elite $222,465.01 in lost profits. An appeal and cross-appeal followed to the Court of Appeals for the Sixth Circuit. The Court of Appeals vacated this Court's award of damages and remanded for "recalculation of damages using Elite's own sales data." *Elite Int'l Enter., Inc. v. Norwall Grp., Inc.*, 628 Fed. Appx. 370, 377 (6th Cir. 2015). Following remand, the Court held a scheduling conference on this matter. The parties submitted briefs on damages. (Dkt. nos. 126, 127.)

**I.    Background**

Plaintiff Elite is a Michigan-based company that specializes in selling wallpaper in the Middle East. Mr. Rami Kseri is Plaintiff's owner, operator, and sole employee. Defendant

Patton Wallcoverings is an Ohio based manufacturer of wallpaper.[1] After conducting business indirectly for a number of years by way of a contract with Mr. Kseri's father, Patton and Elite entered into a direct business relationship, by which Mr. Kseri would sell Patton's products in the Middle East. While the parties did not initially have a written agreement, as a result of Elite's need for documentation to properly import Patton's products in to the Middle East, in March 2011 the parties entered into the document that was at the heart of this dispute. Under the contract, Elite was a sales agent and distributor of Patton products. Patton also established a relationship with a South Korean company, DID Wallcoverings, that became a manufacturer and distributor of Patton products in 2010. While DID's contract permitted DID to sell the Patton products in Asia and the Middle East, it was prevented from selling to other Patton distributors. On August 25, 2011, Patton sent Mr. Kseri an email explaining that it would not be offering Elite any new products for distribution. Elite tried to order Patton products directly from DID but DID declined due to the terms of its own agreement with Patton.

Elite filed suit in this Court on October 18, 2012. The parties filed motions for summary judgment which were determined by this Court's April 24, 2014 opinion and order denying in part and granting in part Plaintiff's motion for summary judgment and granting in part and denying in part Defendants' motion for summary judgment. *Elite Int'l Enter., Inc. v. Patton Wallcoverings, Inc.*, 2014 WL 1652197 (E.D. Mich. Apr. 24, 2014); (Dkt. 48). The Court found that Patton breached the contract by limiting Elite to selling only older product

---

[1] Patton purchased co-defendant Norwall Group, a Canadian wallpaper company, several years prior to the filing of this lawsuit, however, Patton continues to produce wallpaper under the Norwall brand name. For purposes of this case, the Court uses the term "Patton" or "Defendant" to refer to both Patton and Norwall Group.

2

lines. The Court also found that Patton did not breach the contract by selling directly in the Middle East or by using other distributors in the region and there was no evidence of termination of the contract by Patton. The Court held a three-day bench trial on the issue of damages. The Court entered a judgment and award of damages on September 2, 2014, in favor of Plaintiff in the amount of $222,465.01. (Dkt. 77, 78.) Both parties appealed to the Sixth Circuit. The Sixth Circuit affirmed this Court's award of partial summary judgment to Defendant Patton, vacated the damages award to Plaintiff Elite, and remanded the case "for recalculation using Elite's own sales data in the first instance." *Elite Int'l Enter., Inc.*, 628 Fed. Appx. at 376.

## II. ANALYSIS

When a case is remanded by an appellate court, the district court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." *Petition of U.S. Steel Corp*, 479 F.2d 489, 493 (6th Cir. 1973). The Sixth Circuit found that the "evidence, including Elite's tax returns, supports the court's finding that Elite ran a profitable business and that its sales declined following the breach. The district court thus did not abuse its discretion in concluding that Elite suffered some lost profits." *Elite Int'l Enter., Inc.*, 628 Fed. Appx. at 375. However, the Sixth Circuit directed that the Court recalculate damages based on Elite's own sales data, rather than the prior analysis, which involved a calculation based on DID's sales figures in the region. *See id.* at 376-77.

"Michigan contract law counsels that an award of damages should put the injured party in the position it would have been but for the breach." *Elite Intern'l Enter., Inc.,* 628 Fed. Appx. at 374 (citing *Demirjian v. Kurtis*, 91 N.W.2d 841, 843 (Mich. 1958)). "Michigan

3

law ... recognizes the inherent difficulty of measuring lost profits and requires that they be proved with reasonable certainty, not mathematical precision." *Bero Motors, Inc. v. General Motors Corp.*, 2006 WL 2312182, at *8 (Mich. Ct. App. Aug.10, 2006) (citing *Fera v. Village Plaza, Inc.*, 242 N.W.2d 372 (Mich. 1976) and *Joerger v. Gordon Food Serv., Inc.*, 568 N.W.2d 365 (Mich. Ct. App. 1997)).

The Court has considered the parties' briefs on damages and the Court of Appeals decision. Defendant's proposed damages calculation is based in part on the sales data of another distributor of its product in the region, Excel Dubai. (Defs.' Br. on Damages, dkt. 127.) On the basis of Excel Dubai information, Defendant defines those collections to which Plaintiff would not have had access after the breach as the "Withheld Collections." (*Id.*) This description is useful and the Court will use the term to generally refer to the group of products to which Plaintiff did not have access after the breach. The Court otherwise does not find persuasive Defendant's methodology for calculating damages.

One of the findings of fact made by this Court following the trial on damages is the following:

> While the record reflects that Elite and PWI did conduct limited business after the August 25 email, the Court is of the opinion that Elite's eventual total cessation of Norwall brand sales was a result of PWI's breach. That is, while PWI in theory agreed to continue to service Elite's older products, the act of cutting off the new products predictably resulted in Elite's customers losing interest and taking their business elsewhere, thereby destroying Elite's ability to sell even the older products. Further compounding Elite's problems, PWI refused to provide it with sales books on all but two of the older lines.

(Findings of Fact, Conclusions of Law, and Award of Damages, dkt. 77 at 10.) Therefore, Plaintiff is entitled to damages for more than simply the loss of the withheld collections.

4

Plaintiff is entitled to damages for both the old products and the withheld collections from the point at which it eventually ceased selling Defendant's products.

Using Plaintiff's net profit statements for the years 2011 and 2012, the Court is able to construct a framework whereby the post-breach period of time is treated as a baseline for net profit of old products without the withheld collections. (2011, 2012 U.S. Income Tax Returns For An S Corp., Defs.' Br. On Damages Ex. A; Tr. Ex. 559.) The period of time prior to breach, during which Plaintiff had the benefit of a full line of products, is treated as a baseline for net profit for all products, and the difference between the two establishes a value for the net profit from the withheld collections. In 2012 (a post-breach period, without access to the withheld collections), Plaintiff's net profit was $50,986.00 over the nine months in which he was ordering products, or an average of $5,665.11 per month. (Pl.'s Recalculation of Damages ¶ 12); *see also Elite Int'l Enter., Inc.*, 628 Fed. Appx. at 376, 372 ("Elite ordered forty-four rolls of wallpaper from Patton following the breach, with the last order on September 27, 2012.").

Applying this baseline of $5,665.11 per month to the 10 months (March through December) in 2011 in which Plaintiff made sales yields $56,651.10. Plaintiff's net profit/income in 2011 was $71,814.00. (2011 U.S. Income Tax Returns For An S Corp., Defs.' Br. On Damages Ex. A; Tr. Ex. 559.) Therefore, for 2011, Plaintiff earned $15,162.90 above this old products baseline (2011 net profit of $71,814 minus $56,651.10), which can be attributed to Plaintiff having had the benefit of the full line of products from March 2011 through August 2011 (6 months). Therefore, in 2011, the difference between the old products and the full line (later the withheld collections) was worth approximately $2,527.15 per month ($15,162.90 divided by six months). It follows then that the months in which

Plaintiff had access to both the old products and the withheld collections, the position Plaintiff would have been in but for Defendant's breach, yielded net profit of $8,192.26.[2] As set forth above, for the remainder of the contract, from October 2012 through February 2014 (17 months) Plaintiff had no ability to sell any of Defendant's products.

On this basis, the Court awards Plaintiff the value of the withheld collections, $2,527.15 per month, for the thirteen months (September 2011 through September 2012) in which Plaintiff was able to sell only the old products, for a total of $32,852.95. The Court awards Plaintiff the full value of the old products and withheld collections, $8,192.26 per month, for the remainder of the contract, October 2012 through February 2014, totaling $139,268.42. The total damages award is $172,121.37.

**IT IS ORDERED THAT:**

The Court awards Plaintiff Elite International Enterprise, Inc., $172,121.37 in damages for its lost profits as a result of Defendant Patton Wallcoverings Inc.'s breach of contract. A judgment in the aforementioned amount shall be entered forthwith.

**SO ORDERED.**

---

[2] It is worth noting that under this methodology, the withheld collections were worth approximately 31% of the total net profit. This percentage is close to Defendant's methodology in which the withheld collections constituted 29% of Excel Dubai's sales. (Defs.' Br. On Damages 8.)

Further, this analysis addresses the Court of Appeals' concern that Defendant's then-proposed methodology "fixes Elite's 2011 net-profit figure as the baseline for determining damages, ignoring the possibility that Elite would have earned more than $71,814 in net profit in 2011 had the breach not occurred mid-year." *Elite Int'l Enter., Inc.*, 628 Fed. Appx. at 376. However, the Court finds that increasing the profit above these baselines over the remaining time of the contract is too speculative.

      s/Nancy G. Edmunds
      Nancy G. Edmunds
      United States District Judge

Dated: June 8, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 8, 2016, by electronic and/or ordinary mail.

      s/Carol J. Bethel
      Case Manager