UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELITE INTERNATIONAL ENTERPRISE,
INC.,

       Plaintiff,

v.

PATTON WALLCOVERINGS, INC., and
NORWALL GROUP, INC.,

       Defendants,

                                        /

Case No. 12-14620

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S RULE 59(e) MOTION [133], DENYING DEFENDANT'S RULE 59(e) MOTION [136], AND AMENDING THIS COURT'S PRIOR OPINION AND ORDER ON RECALCULATION OF DAMAGES [129]**

Plaintiff Elite International Enterprise, Inc., ("Elite" or "Plaintiff") obtained a grant of summary judgment as to liability against Defendant Patton Wallcoverings, Inc. ("Patton" or "Defendant"). The case went to a bench trial on damages where the Court awarded Elite $222,465.01 in damages for lost profits. *See Elite Int'l Enter., Inc. v. Patton Wallcoverings, Inc.*, 2014 WL 4321776 (E.D. Mich. Sept. 2, 2014). Cross-appeals followed to the Court of Appeals for the Sixth Circuit. The Sixth Circuit vacated the damages award and remanded for "recalculation of damages using Elite's own sales data." *Elite Int'l Enter., Inc. v. Norwall Grp., Inc.*, 628 Fed. Appx. 370, 377 (6th Cir. 2015). Following remand, the Court held a scheduling conference on this matter, the parties submitted briefs on damages and the Court issued an opinion and order on recalculation of damages awarding total damages to Plaintiff in the amount of $172,121.37. (Dkt. nos. 126, 127, 129.) The parties filed cross-

motions to amend the judgment under Fed. R. Civ. P. 59(e). The Court considered the motions and amends its prior opinion and order and judgment as follows.

**I.  Background**

Plaintiff Elite is a Michigan-based company that specializes in selling wallpaper in the Middle East. Mr. Rami Kseri is Plaintiff's owner, operator, and sole employee. Defendant Patton Wallcoverings is an Ohio based manufacturer of wallpaper.[1] The relevant background is set forth in the Court's June 8, 2016 opinion and order on recalculation of damages. (Dkt. 129.)

**II.  ANALYSIS**

The parties timely moved to alter or amend the findings of fact and judgment in the Court's prior opinion and order (dkt. 129). *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). "Motions to alter or amend judgement may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. American International Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). The "purpose of Rule 59(e) is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988)). "A district court, generally speaking, has considerable discretion in deciding whether to grant either type of motion,

---

[1] Patton purchased co-defendant Norwall Group, a Canadian wallpaper company, several years prior to the filing of this lawsuit, however, Patton continues to produce wallpaper under the Norwall brand name. For purposes of this case, the Court uses the term "Patton" or "Defendant" to refer to both Patton and Norwall Group.

. . . ." *Leisure Caviar, LLC v. U.S. Fish and Wildlife Service*, 616 F.3d 612, 615 (6th Cir. 2010).

The Court has considered the parties' arguments in full. Plaintiff brings to the Court's attention that the 2012 net profit amount used as a basis for the Court's calculation in its prior judgment was based on income Plaintiff received from selling both Patton products and non-Patton products (including Blue Mountain products). In its Motion to Amend, Plaintiff explains that its 2012 profit from Patton's "old products" would have been less than $6,000 and the "remaining $44,000 shown on Elite's [2012] tax returns came from other sources that have nothing to do with this case . . . ." (Pl.'s Mot. to Amend 7, Ex. C, dkt. 133,133-4.) The Court agrees that the judgment should be amended to reflect this, which requires a new damages calculation.

As set forth in the prior opinion and order, Plaintiff is entitled to damages for more than simply the loss of the withheld collections. Plaintiff is entitled to damages for both the old or existing products when it became unable to practically sell them due to Defendant's breach, and the withheld collections. In 2011, Plaintiff earned net income of $71,814, "during a robust period of sales of all Patton's products." (Pl.'s Mot. to Amend 6; Kseri Testimony, Trial Tr. Vol. 1 at 227, Ex. 69); *see also Elite Int'l Enter., Inc.*, 628 Fed. Appx. at 376. The Court uses the 2011 net income as a starting point from which to calculate lost profits. The Court also notes Mr. Kseri's testimony that Blue Mountain products generally accounted for 10-15% of the its sales. (Trial Tr. Vol. 1 at 173-74, dkt. 69.) Therefore, the Court reduces Plaintiff's 2011 net profit by the mean and median of that range, 12.5%, to arrive at 2011 net profit of $62,837.25.

3

Defendant makes two arguments. Defendant's first argument is that the Court erred in relying solely on Elite's past sales history, where Elite has no sales history for those collections that Patton withheld and the Court should have coupled Plaintiff's sales history with that of Excel Dubai for those collections which were withheld from Plaintiff. To the extent Defendant takes issue with the Court's statement that Plaintiff had the benefit of the full line of products from March 2011 through August 2011, the Court's finding could indeed have been more clearly stated. The Court agrees that the "withheld collections" as defined by Defendant as Cheeky Monkey, Silk Impressions and Rose Garden, included collections that were not yet released in 2011. Prior to Defendant's August 2011 breach, however, Plaintiff was operating at full capacity so-to-speak: Plaintiff had books from which to sell product, it had access to its existing product lines, and it was not yet in the position of trying to sell to existing or new customers without the benefit of books, current product and upcoming product. Evidence shows that this changed after the August 2011 breach, when Plaintiff's access to books and the existing collections was reduced.[2] The Court already found that "the act of cutting off the new products predictably resulted in Elite's customers losing interest and taking their business elsewhere, thereby destroying Elite's ability to sell even the older products. Further compounding Elite's problems, PWI refused to provide it

---

[2] For example, Mr. Kseri testified that in October 2011, he requested specific collection books via email and he was notified that he could no longer have books for Simply Silk 2, Classic Silk and Texture Style, three collections with which he had previously been working. (Trial Tr. Vol. 1 at 132, dkt. 69); *see also Elite Int'l Enter., Inc.*, 2014 WL 4321776, at *3. He testified that, except for a reorder sale to his father, he was not able to sell these collections after the October email. (*Id.* at 133; *see also* Trial Tr. Vol. III at 86-87, dkt. 71.)

4

with sales books on all but two of the older lines." (Findings of Fact, Conclusions of Law, and Award of Damages, dkt. 77 at 10.)[3]

Defendant argues that the Court should use sales numbers from Excel Dubai to calculate Plaintiff's damages and has twice stated that Excel Dubai's sales of Cheeky Monkey, Silk Impressions and Rose Garden (comprising Defendant's definition of the Withheld Collections) accounted for 29% of Excel Dubai's total sales.[4] (Def.'s Mot. to Amend 11, dkt. 136; Def.'s Br. on Damages 8, dkt. 127.) After adding Excel Dubai's numbers itself, the Court concludes that the total number of rolls of wallpaper sold by Excel Dubai is 69,479 and the number of rolls sold by Excel Dubai for these three collections is 22,456. (Def.'s Br. on Damages Ex. C, dkt. 127-4.) Therefore, the three withheld collections accounted for 32% of Excel Dubai's total sales in 2011 through the first quarter of 2014. (dkt. 127-4.) The Court finds that Excel Dubai is sufficiently similar to Plaintiff to use these numbers as guidance for what Elite would have sold on the three collections (Cheeky

---

[3]Even the Sixth Circuit agreed, noting its concern that Defendant's then-proposed damages methodology "fixes Elite's 2011 net-profit figure as the baseline for determining damages, ignoring the possibility that Elite would have earned more than $71,814 in net profit in 2011 had the breach not occurred mid-year." *Elite Int'l Enter., Inc.*, 628 Fed. Appx. at 376. Yet Plaintiff's argument that it lost $165,000 at the end of 2011 due to the breach is not supported by the record other than Mr. Kseri's testimony, and he testified that he did not have written documents to evidence the orders that are the basis of this alleged six-figure loss. (Trial Tr. Vol. III at 89, 93-95, dkt. 71.)

[4]The Sixth Circuit criticized the dissent's suggestion that the Court compare Elite to competitor sub-distributors like Excel Dubai, because the dissent failed to identify any sub-distributor sales data evidence in the record. *See Elite Intern. Enter., Inc.*, 628 Fed. Appx. at 376. Yet in its prior brief on damages (dkt. 127), Defendant pointed to Plaintiff's provision of sales data for Excel Dubai and Excel India and therefore provides a basis to rely on Excel Dubai's sales to assign a value to the loss of the three collections which were withheld. (Def.'s Br. on Damages 6 and Ex. C, dkt. 127, 127-4; Tr. Ex. 72; Trial Tr. Vol. I at 146, dkt. 69.) Not only did Mr. Kseri provide the list of the Excel Dubai sales numbers, he was questioned on the same at the trial. (Trial Tr. Vol. I at 146, dkt. 69.)

Monkey, Silk Impressions and Rose Garden) that were not made available to Plaintiff. The Court will use 32% to calculate lost sales.

The three withheld collections (Silk Impressions, Rose Garden and Cheeky Monkey) will be treated as adding an additional 32% to the 2011 Patton net profit for years 2012 through February 2014. Damages for 2012 are $76,945.17 ($82,945.17 minus the estimated $6000 in sales profit that Plaintiff was able to eke out of its remaining Patton/Norwall product); damages for 2013 are $82,945.17; and damages for the first two months of 2014 are $13,824.20. Total damages are $173,714.54. This order amends the Court's June 8, 2016 Opinion and Order on Calculation of Damages (dkt. 129).

Defendant also argues that the Court did not take into account that Elite lost its largest profit-producing customer prior to Defendant's breach "through absolutely no fault of Patton." (Def.'s Mot. to Amend 4.) Defendant shows no reason to revisit the Court's use of Plaintiff's net income for the years at issue as a basis from which to calculate damages. As in the June 8, 2016 opinion and order, the Court proceeds according to the "mandate and law of the case as established by the appellate court." *See Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir. 1973). The Court finds that using the 2011 net income as a basis from which to start provides a reasonable degree of certainty in calculating Plaintiff's damages. *See generally Demirjian v. Kurtis*, 91 N.W.2d 841, 843 (Mich. 1958). This method does not leave Plaintiff in a better position than it would have been without the breach, nor does it result in manifest injustice.

**IT IS ORDERED THAT:**

The Court GRANTS IN PART Plaintiff's motion to amend (dkt. 133, 138), DENIES Defendant's motion to amend (dkt. 136, 137), and amends its prior award to Plaintiff Elite

International Enterprise, Inc., to $173,714.54 in damages for its lost profits as a result of Defendant Patton Wallcoverings Inc.'s breach of contract. An amended judgment in the aforementioned amount shall be entered forthwith.

**SO ORDERED.**


     s/Nancy G. Edmunds
     Nancy G. Edmunds
     United States District Judge

Dated: October 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2016, by electronic and/or ordinary mail.

     s/Carol J. Bethel
     Case Manager